## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OPREX SURGERY (BAYTOWN), L.P.** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:14-CV-2330** |
| | § | |
| **SONIC AUTOMOTIVE WELFARE** | § | |
| **BENEFITS PLAN** | § | |
| *Defendant.* | § | |

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT

---

### I.    INTRODUCTION

1.      This is an action by Oprex Surgery (Baytown), LP ("Plaintiff") against Sonic Automotive Inc. Welfare Benefits Plan ("Plan" or "Defendant") for failure to properly reimburse Plaintiff for health care services rendered to Defendant's members (employees of Sonic Automotive, Inc.). Defendant is a self-funded benefit plan governed by ERISA.

2.      The Plan Administrator of a self-funded plan <u>must</u> act in accordance with Plan documents.  As stated by the United States Supreme Court:

> ERISA provides no exception to the plan administrator's duty to act in accordance with plan documents. Thus, the Estate's claim stands or falls by 'the terms of the plan,'" 29 U. S. C. §1132(a)(1)(B), a straight forward rule that lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'

*See Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan, et al.,* 555 U.S. 285, 286 (2009), *aff'd* 497 F.3d 426 (quoting *Egelhoff v. Egelhoff,* 532 U. S. 141, 148 (2001).

Plaintiff is entitled to be paid pursuant to the terms of the Plan covering Sonic Automotive Inc.'s employees who are members of the Plan and who assigned all of their rights, including the right to pursue ERISA claims, to Plaintiff prior to healthcare services being

rendered by Plaintiff. Plaintiff was either not paid at all or grossly underpaid in violation of Plan terms and in violation of ERISA. Plaintiff verified each of Defendant's member's out-of-network benefits as instructed by Defendant prior to any of the health care services being rendered. Plaintiff then, relying on the representations of coverage made by Defendant, provided the health care services and submitted the claims for payment. The payments made by Defendant, if any, amounted to only a small fraction of the billed charges, sometimes pennies on the dollar, and were accompanied by nonsensical Explanations of Benefits and/or "Remit Forms." On average, Plaintiff was paid by Defendant only 1.3% of its billed charges.

3.      Plaintiff, with a full set of rights in hand obtained directly from the member prior to services being rendered and standing in the shoes of the member, exhausted all appeals and administrative remedies under the Plan, appealing at least two levels with certified letters sent to both Defendant Plan Administrator and its TPA Claim Administrator, and requesting the claims files, entire administrative records, the Summary Plan Description, the official or master Plan documents and all of the relevant plan documents or information that ERISA requires an ERISA plan administrator and/or fiduciary to produce.

4.      In response to all of Plaintiff's appeals, Sonic sometimes produced a purported summary plan description, but never a legally enforceable official or master plan document, nor entire administrative records with explanations of any methods of calculation or determination of the plan term "allowed amount" for payment, despite specific and repeated written requests. Instead, any response given by Sonic always included a form or template-type response with computer-generated language upholding the original reimbursement determination. This practice clearly does not comport with the full and fair review obligations, again in violation of ERISA.

5.      Specifically, Sonic failed to comply with the below four points as stated by the United States Supreme Court in *CIGNA Corp. v. Amara,* 131 S. Ct. 1866 (U.S. 2011):

- "[w]e cannot agree that the terms of statutorily required plan summaries . . . may be enforced . . . as the terms of the plan itself." *Id.* at 1877.

- "[w]e conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan . . . " *Id.* at 1878.

- "[t]he surcharge remedy extends to a breach of trust committed by a fiduciary encompassing any violation of duty imposed upon that fiduciary." *Id.* at 1869.

- "[t]o obtain relief by surcharge for violations of §§ 102(a) and 104(b), a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation. Although it is not always necessary to meet the more rigorous standard implicit in the words 'detrimental reliance,' actual harm must be shown. *Id.* at 1881-82.

6.      These facts and ERISA law give rise to claims for violations of ERISA for failure to pay or for underpayment in violation of Plan terms, breach of contract, negligent misrepresentation or alternatively breach of fiduciary duty (ERISA).

7.      Sonic's failure to follow proper ERISA procedures, failure to provide documents and information upon request and failure to provide a full and fair review at time of appeal constitute independent violations of ERISA.

8.      Specifically, Sonic failed to comply with ERISA § 2560.503-1(h), Appeal of Adverse Benefit Determinations:

(1)      In general. Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

(2)      Full and fair review. Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures—

3

(i)     Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

(ii)     Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

(iii)     Provide that a claimant shall be given, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;

(iv)     Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(3)     Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures—

(i)     Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

(ii)     Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

(iii)     Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

(iv)     Provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination;

4

(v)     Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual; and

(vi)    Provide, in the case of a claim involving urgent care, for an expedited review process pursuant to which—

(A)     A request for an expedited appeal of an adverse benefit determination may be submitted orally or in writing by the claimant; and

(B)     All necessary information, including the plan's benefit determination on review, shall be transmitted between the plan and the claimant by telephone, facsimile, or other available similarly expeditious method.

## II.   **PARTIES**

9.     Plaintiff, Oprex Surgery (Baytown), L.P. ("Oprex"), is a surgery center and a limited partnership, with operations in Baytown, Texas.

10.    Defendant Sonic Automotive Welfare Benefits Plan is an ERISA governed employee benefit plan for the benefit of Sonic Automotive, Inc.'s employees with its principal place of business in North Carolina, although it conducts substantial business in Texas. Defendant may be served by serving its Plan Administrator at Sonic Automotive, Inc., Jon R. Rankin, at 4401 Colwick Road, Charlotte, North Carolina, 28211 pursuant to the Plan Documents.

## III.  **JURISDICTION AND VENUE**

11.    Plaintiff's claims arise in part under 29 U.S.C. §§ 1001, *et seq.,* the Employment Retirement Income Security Act ("ERISA"), including 29 U.S.C. § 1132(a)(1)(B); under 28 U.S.C. § 1331; and under 28 U.S.C. § 1332.

12.    29 U.S.C. 1132(e)(1) states that "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs

2177978.1/SPH/27768/0105/072415

(1)(B) and (7) of subsection (a) of this section." 29 U.S.C. 1132(f) further provides that "[t]he district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."

13.     Venue is appropriate in this Court under 29 U.S.C. 1132(e)(2), which states that "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

14.     Venue is also appropriate under 28 U.S.C. § 1391 because Defendant conducts a substantial amount of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.     STATEMENT OF FACTS

### A.     Parties

15.     Plaintiff is an ambulatory surgery center in Baytown, Texas.

16.     Defendant is an ERISA-governed self-funded plan for the benefit of Sonic Automotive, Inc. employees, with its principal place of business in North Carolina, although it conducts substantial business in Texas.

### B.     Self-Funded Plan

17.     A self-funded plan is an insurance plan for which a plan sponsor acts as the insurer and makes payments on claims directly through its general assets or through a trust fund established for that purpose.  Although Defendant delegated the responsibility of processing its members' claims to its agent, BlueCross BlueShield of North Carolina ("BCBSNC"), Defendant continued to maintain a fiduciary responsibility to its members under ERISA.  By allowing

6

BCBSNC to process its members' claims without reference to the terms of the Plan and not in accordance with terms of the summary plan description produced to Plaintiff, Defendant not only failed to reimburse Plaintiff appropriately in accordance with Plan terms in violation of ERISA, but, as an alternative claim to Plaintiff's right to payment per terms of the plan, Defendant breached its fiduciary responsibilities to its members, and through assignment, to Plaintiff.

      **C.**      **Defendant Failed to Pay Plaintiff in Accord with the Plans**

18.      Plaintiff provided healthcare services to Plan members and, through assignments of rights, Plaintiff is entitled to reimbursement by Defendant. Healthcare providers are classified as either (a) "in-network" providers who have negotiated discount rates with an insurance company or (b) "out-of-network" providers who submit billed charges for which they are to be paid in accord with the terms of the healthcare benefits plans or insurance policies.

19.      For in-network providers, plans are obligated to pay a negotiated amount per the contract between the plan and the provider. In-network providers agree to accept a lower amount of reimbursement for their services in exchange for volume or being part of the plan's published network.

20.      Plaintiff is an out-of-network provider. It had no contract with Defendant and is not bound by any terms of such a contract or fee schedules Defendant negotiated with other providers. Instead, per ERISA, Defendant is obligated to pay each claim submitted in accord with the terms of the Plan, not based on an arbitrarily and capriciously determined method of calculation employed for ease of processing or for the financial benefit of Defendant. As discussed in more detail below, the paid amount should be some variation of Plaintiff's billed charges and/or other comparable providers' billed charges for similar services in the same geographic area, by zip code.

21.     All out-of-network benefits were verified by Plaintiff prior to any healthcare services being provided. A Plan like Defendant's which includes out-of-network benefits and allows patients to choose their providers collects higher premiums than plans that restrict their members to in-network providers. Higher premiums are collected because out-of-network providers work for and earn higher reimbursement—they receive no benefit of volume from the plan.

### 1.     Plan Terms

22.     To date, after exhausting all plan administrative appeal remedies with specific written requests for all legally enforceable plan documents, Plaintiff has been denied any access to the legally enforceable and governing plan terms and Defendant has not disclosed nor demonstrated compliance with any legally enforceable governing plan terms that guided its reimbursement calculation for the health care services rendered by Plaintiff. By letter response to some of Plaintiff's appeal correspondence, Defendant produced what it referred to as the "Summary Plan Description." However, the document produced by Defendant refers to itself as the Benefit Booklet and clearly states, "[i]n the event of a conflict between this booklet and the terms of the Plan document, the Plan document will control," which is an accurate statement of ERISA law. *See Cigna v. Amara,* 131 S. Ct. 1866 (2011). But no legally enforceable and governing "plan document" has been produced by Defendant and none has been referenced in calculating reimbursement, all in violation of ERISA.

23.     Defendant breached its obligation to pay in accordance with the official governing plan terms by determining reimbursement in an arbitrary and capricious way, without reference to the official governing terms of the plan in violation of ERISA. Defendant reimbursed Plaintiff not even in conformity with its own Plan term of "allowed amount" and without any disclosure

8

of the precise methodology used in its calculation of "allowed amount" for "comparable or similar services under a similar health benefit plan. Defendant instead reimbursed Plaintiff with an unreasonably low discounted fee not in accord with the purported plan terms and substantially below the usual, customary and reasonable rate or rate billed by similarly situated out-of-network providers for the same services, 1.3% of billed charges on average. Defendant, although requested to do so on multiple occasions in an ERISA-compliant manner, refused to produce the plan document. Accordingly, Defendant should be estopped from introducing into evidence any plan document or other explanation of its method of calculation of reimbursement at any point in this litigation or at trial and Defendant should be precluded from raising any such defenses to Plaintiff's claim for reimbursement for billed charges.

24.    Though no Plan documents have been produced even though requested on multiple occasions, Defendant has produced a Benefit Booklet. The Benefit Booklet defines "Allowed Amount" as:

> The maximum amount that BCBSNC determines is reasonable for COVERED SERVICES provided to a MEMBER. The allowed amount includes any BCBSNC payment to the PROVIDER, plus any deductible, coinsurance or copayment. For PROVIDERS that have entered into an agreement with BCBSNC, the allowed amount is the negotiated amount that the PROVIDER has agreed to accept as payment in full. Except as otherwise specified in "Emergency Care", for PROVIDERS that have not entered into an agreement with BCBSNC, the allowed amount will be the lesser of the PROVIDER'S billed charge or an amount based on an out-of-network fee schedule established by BCBSNC that is applied to comparable for similar services under a similar health benefit plan. Where BCBSNC has not established an out-of-network fee schedule amount for the billed service, the allowed amount will be the lesser of the PROVIDER'S billed charge or a charge established by BCBSNC using a methodology that is applied to comparable PROVIDERS who may have entered into an agreement with BCBSNC for similar services under a similar health benefit plan. Calculation of the allowed amount is based on several factors including BCBSNC's medical, payment and administrative guidelines. Under the guidelines, some procedures charged separately by the PROVIDER may be combined into one procedure for reimbursement purposes.

Defendant has failed to pay even in accordance with the terms of the Benefit Booklet.

**2.      Plaintiff Verified Coverage, Received Assignments and Appealed Denials or Underpayments.**

*Verification of Benefits*

25.      Defendant's members received medically necessary healthcare services from Plaintiff. Before providing such services, Plaintiff verified that the individual patients and services to be provided were covered under the Plan. Defendant provided its members an insurance card with specific instructions to its members' health care providers regarding insurance verification and claims submission, which Plaintiff precisely followed. Through the verification process for all Plan members treated by Plaintiff, Defendant represented that its members were covered under the plans and further verified that the medical services to be provided were likewise covered.

26.      This verification process was part of Plaintiff's routine and usual practice.  That is, prior to providing the medically necessary health care services to each of the Plan members treated by Plaintiff, Plaintiff routinely called Defendant to verbally confirm that each of the individual patients that Plaintiff inquired about were covered under the Plan, had applicable out-of-network benefits, and that the expected medical procedures were covered by the Plan. Plaintiff reasonably, foreseeably, and detrimentally relied upon Defendant's affirmative confirmation of benefits coverage, and thus, provided the medical services to Defendant's Plan members.

27.      Specifically, on February 5, 2014 Plaintiff's representative "Reba" spoke with Defendant's agent "Ashleynn L." to verify the benefits coverage for one of Defendant's Plan members, Patient #2026.  On behalf of Defendant, "Ashleynn L." affirmatively represented to Plaintiff that Patient #2026 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's usual and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $6,400.

Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 19698593490.  Relying on the information provided by Defendant, on February 6, 2014, Plaintiff rendered health care services to Patient #2026.

28.     Similarly, on November 5, 2013, Plaintiff's representative "Reba" spoke with Defendant's agent "Celia B." to verify the benefits coverage for Patient #2026.  On behalf of Defendant, "Celia B." affirmatively represented to Plaintiff that Patient #2026 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's usual and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000.  Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 18930040255.  Relying on the information provided by Defendant, on November 7, 2013, Plaintiff rendered health care services to Patient #2026.

29.     On May 9, 2013, Plaintiff's representative "Chanell" spoke with Defendant's agent "Jana A." to verify the benefits coverage for one of Defendant's Plan members, Patient #6605.  On behalf of Defendant, "Jana A." affirmatively represented to Plaintiff that Patient #6605 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's usual and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000.  Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 17399650779.  Relying on the information provided by Defendant, on May 10, 2013, Plaintiff rendered health care services to Patient #6605.

30.     Likewise, on March 15, 2013, Plaintiff's representative "O.G." spoke with Defendant's agent "Belinda C." to verify the benefits coverage for one of Defendant's Plan

11

members, Patient #6205.  On behalf of Defendant, "Belinda C." affirmatively represented to Plaintiff that Patient #6205 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000. Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 1-7278184707.  Relying on the information provided by Defendant, on March 19, 2013, Plaintiff rendered health care services to Patient #6205.

31.    Also, on November 7, 2012, Plaintiff's representative "Chanell" spoke with Defendant's agent "Terry W." to verify the benefits coverage for one of Defendant's Plan members, Patient #4463.  On behalf of Defendant, "Terry W." affirmatively represented to Plaintiff that Patient #4463 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000. Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 17004399715.   Relying on the information provided by Defendant, on November 13, 2012 Plaintiff rendered health care services to Patient #4463.

32.    Similarly, on October 23, 2012, Plaintiff's representative "Chanell" spoke with Defendant's agent "Jennifer" to verify the benefits coverage for one of Defendant's Plan members, Patient #5140.  On behalf of Defendant, "Jennifer" affirmatively represented to Plaintiff that Patient #5140 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $4,800, and an out-of-pocket maximum of $23,200. Defendant also informed Plaintiff that the reference number for that specific verification of

benefits call was 1-6962403406.  Relying on the information provided by Defendant, on October 24, 2012, Plaintiff rendered health care services to Patient #5140.

33.     Likewise, on September 5, 2012, Plaintiff's representative "O.G." spoke with Defendant's agent "Tammy A." to verify the benefits coverage for one of Defendant's Plan members, Patient #5140.  On behalf of Defendant, "Tammy A." affirmatively represented to Plaintiff that Patient #5140 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $4,800, and an out-of-pocket maximum of $23,200. Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 1-70563076.  Relying on the information provided by Defendant, on September 6, 2012, Plaintiff rendered health care services to Patient #5140.

34.     Also, on June 4, 2012, Plaintiff's representative "O.G." spoke with Defendant's agent "Shantel D." to verify the benefits coverage for one of Defendant's Plan members, Patient #4464.  On behalf of Defendant, "Shantel D." affirmatively represented to Plaintiff that Patient #4464 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000.  Relying on the information provided by Defendant, on June 6, 2012, Plaintiff rendered health care services to Patient #4464.

35.     Similarly, on March 6, 2012, Plaintiff's representative "O.G." spoke with Defendant's agent "Star G." to verify the benefits coverage for one of Defendant's Plan members, Patient #4045.  On behalf of Defendant, "Star G." affirmatively represented to Plaintiff that Patient #4045 had out-of-network benefits for the expected medical procedures,

covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000. Relying on the information provided by Defendant, on March 14, 2012, Plaintiff rendered health care services to Patient #4045.

36.     Likewise, on March 2, 2012, Plaintiff's representative "P. Miller" spoke with Defendant's agent "Geri I." to verify the benefits coverage for one of Defendant's Plan members, Patient #4039.  On behalf of Defendant, "Geri I." affirmatively represented to Plaintiff that Patient #4039 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000.  Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 16507237325.  Relying on the information provided by Defendant, on March 6, 2012, Plaintiff rendered health care services to Patient #4039.

37.     Also, on January 20, 2012, Plaintiff's representative "O.G." spoke with Defendant's agent "Debra L." to verify the benefits coverage for one of Defendant's Plan members, Patient #3621.  On behalf of Defendant, "Debra L." affirmatively represented to Plaintiff that Patient #3621 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $6,400. Relying on the information provided by Defendant, on January 23, 2012, Plaintiff rendered health care services to Patient #3621.

38.     Similarly, on August 11, 2011, Plaintiff's representative "P. Miller" spoke with Defendant's agent "Chanel" to verify the benefits coverage for one of Defendant's Plan

members, Patient #2484.   On behalf of Defendant, "Chanel" affirmatively represented to Plaintiff that Patient #2484 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000. Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 1-6105414175.   Relying on the information provided by Defendant, on August 15, 2011, Plaintiff rendered health care services to Patient #2484.

39.   On October 13, 2011, Plaintiff's representative "P. Miller" also spoke with Defendant's agents "James" and "Tracey" to verify the benefits coverage for Patient #2484.   On behalf of Defendant, "James" and "Tracey" affirmatively represented to Plaintiff that Patient #2484 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000.   Defendant also informed Plaintiff that the reference number for that specific verification of benefits call was 1-6228676317.   Relying on the information provided by Defendant, on October17, 2011, Plaintiff rendered health care services to Patient #2484.

40.   On June 30, 2011, Plaintiff's representative (believed to be "D. Ray") spoke with Defendant's agent "Anita" to verify the benefits coverage for one of Defendant's Plan members, Patient #2335.   On behalf of Defendant, "Anita" affirmatively represented to Plaintiff that Patient #2335 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400.   Relying on the information provided by Defendant, on July 5, 2011, Plaintiff rendered health care services to Patient #2335.

41.     On May 27, 2011, Plaintiff's representative "B. Kratz" spoke with Defendant's agent "Chanel" to verify the benefits coverage for Patient #2026.  On behalf of Defendant, "Chanel" affirmatively represented to Plaintiff that Patient #2026 had out-of-network benefits for the expected medical procedures, covering at least 50% of Plaintiff's reasonable and customary charges for those procedures, with an applicable out-of-network deductible of $1,400, and an out-of-pocket maximum of $5,000.  Relying on the information provided by Defendant, on June 1, 2011, Plaintiff rendered health care services to Patient #2026.

### *Assignment of Benefits and Administrative Appeals*

42.     Additionally, it has long been Plaintiff's practice to require that all patients execute an assignment of benefits form prior to receiving healthcare services. The assignment of benefits form gives Plaintiff the right, among other things, to pursue claims, including ERISA reimbursement claims and, alternatively, ERISA breaches of fiduciary duty claims. The assignment completed by Plaintiff's patients in this matter reads as follows:

> ASSIGNMENT OF BENEFITS, ASSIGNMENT OF RIGHTS TO PURSUE ERISA AND OTHER LEGAL AND ADMINISTRATIVE CLAIMS ASSOCIATED WITH MY HEALTH INSURANCE AND /OR HEALTH BENEFIT PLAN (INCLUDING BREACH OF FIDUCIARY DUTY) AND DESIGNATION OF AUTHORIZED REPRESENTATIVE
>
> In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand that I am financially responsible for all charges regardless of any applicable insurance or benefit payments. I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.

In addition to the assignment of the medical benefits and/or insurance reimbursement above, I also assign and/or convey to the above named health care provider any legal or administrative claim or chose in action arising under any group health plan, employee benefits plan, health insurance or tortfeasor insurance concerning medical expenses incurred as a result of the medical services I received from the above-named provider (including any right to pursue those legal or administrative claims or chose in action.) This constitutes an express and knowing assignment of ERISA breach of fiduciary duty claims and other legal and/or administrative claims.

I intend by this assignment and designation of authorized representative to convey to the above-named provider all of my rights to claim (or place a lien on) the medical benefits related to the care provided by the above-named provider, including rights to any settlement, insurance or applicable legal or administrative remedies (including damages arising from ERISA breach of fiduciary duty claims). The assignee and/or designated representative (above-named provider) is given the right by me to (1) obtain information regarding the claim to the same extent as me; (2) submit evidence; (3) make statements about facts or law; (4) make any request including providing or receiving notice of appeal proceedings; (5) participate in any administrative and judicial actions and pursue claims or chose in action or right against any liable party, insurance company, employee benefit plan, health care benefit plan, or plan administrator. The above-named provider as my assignee and my designated authorized representative may bring suit against any such health care benefit plan, employee benefit plan, plan administrator or insurance company in my name with derivative standing at provider's expense.

Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA (health care reform legislation), ERISA, Medicare and applicable federal and state laws. A photocopy of this assignment is to be considered valid, the same as if it was the original.

43.    After various health care services were rendered, Plaintiff timely submitted claims to Defendant seeking payment for services rendered. The claims that are at issue in this case were not paid in accord with the Plan terms.

44.    When claims were underpaid or denied, Plaintiff appealed the denials not once, but twice, exhausting all appeals and administrative remedies under the Plan. The appeals resulted in a rubber-stamped reinforcement of the prior determination with no reference to specific Plan terms and without production of the documents and information specifically requested, again in violation of ERISA. In short, the appeals were an exercise in futility.

17

45.     Plaintiff provided the services to Defendant's members in good faith and expected to be paid promptly and fairly. However, Defendant either unreasonably denied the claims in whole or arbitrarily and capriciously underpaid the amounts owed to Plaintiff.

46.     Pursuant to 29 CFR 2520.104b-1(c)(1)(i), the Plan Administrator must provide electronic or written notification, and the notification shall set forth, in a manner calculated to be understood by the claimant— (1) The specific reason or reasons for the adverse determination; (2) Reference to the specific plan provisions on which the benefit determination is based; (3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section; (4) A statement describing any voluntary appeal procedures offered by the plan and the claimant's right to obtain the information about such procedures described in paragraph (c)(3)(iv) of this section, and a statement of the claimant's right to bring an action under section 502(a) of the Act; and (5) In the case of a group health plan or a plan providing disability benefits—

(i)     If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the claimant upon request;

(ii)    If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and

(iii)    The following statement: ''You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.''

### 3.    Example Claim - Patient TL (Patient #4045)

47.    Patient TL (Patient #4045) a minor, was diagnosed by her physician (an ear, nose and throat specialist) with recurrent tonsillitis, adenoiditis, chronic sinusitis, and nasal obstruction following, as reported, six to seven episodes of tonsillitis annually and postnasal drip with little to no relief from conservative treatment. Her physician recommended and ordered a bilateral ethmoidectomy, a bilateral maxillary sinus antrostomy, a bilateral resection of polyps in the maxillary antrum, a tonsillectomy and an adenoidectomy all to be performed at Plaintiff's surgery center.

48.    On March 6, 2012, in anticipation of the surgery which was tentatively scheduled for March 14, 2012, a representative of Plaintiff, "O.G." called Defendant's agent, BCBSNC, per instructions on the insurance card provided to its members by Defendant, and the representative spoke to "Star G." (no last name provided). On behalf of Defendant, "Star G." verified TL's out-of-network benefits and coverage for the procedures to be performed. Plaintiff relied on the

verification of TL's benefits when it confirmed that TL's procedure would go forward as scheduled and which was performed as ordered by her physician.

49.     At time of registration, TL's mother signed an Assignment of Benefits and Designation of Authorized Representative including the exact language referenced in Paragraph 20, above. As with all of Plaintiff's patients, the Assignment gave Plaintiff the right to be paid directly from the Plan, rights to challenge and appeal the reimbursement, rights to pursue litigation including ERISA causes of action and rights to receive Summary Plan Descriptions, Master Plan Documents, entire Claim Files, and Administrative Files, among other documents and information, as if Plaintiff was the member. Through this assignment, Plaintiff stood in TL's shoes.

50.     Following TL's procedures which were performed as ordered on March 14, 2012, Plaintiff submitted its claim for payment of the facility fee to Defendant, through its agent, as instructed on the insurance card provided by Defendant to its members, in the amount of $60,418.65.

51.     Defendant, through its agent, made payment on the claim in the amount of $1,176.91, only 1.9% of billed charges. Included with the pennies-on-the-dollar payment was an Explanation of Benefits of sorts, or a "Remit Report." The report made absolutely no sense, was essentially indecipherable, and used codes like "104 Managed care withholding," "45 Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement," and "CO Contractual Obligations." The codes are irrelevant and inapplicable to the billed charges submitted by Plaintiff, an out-of-network provider with no managed care contract.

52.     ERISA requires explanations of benefits or claims denial notices to include (a) the specific reason or reasons for the adverse determination (defined as anything less than payment

for full billed charges), (b) reference to the specific plan provisions on which the determination is based, (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, (d) a description of the plan's review procedures, and (e) free of charge upon request copies of internal rules, guidelines, or protocols or other information if relied upon in making the adverse benefit determination, among other things.   Neither the Explanation of Benefits/Remit Report nor Defendant's response to the specific request for this information on appeal included the documents or information required by ERISA.

53.     On June 11, 2012, Plaintiff sent its ERISA Internal Appeals of Claims Denial letters to Defendant and its agent. The letter requested a full and fair review, a copy of TL's entire claim file, a copy of the Summary Plan Description, the IRS 5500 Form, and the Master Plan documents. Plaintiff was seeking an explanation of the payment and a translation of the Remit Report. None came. Instead, on June 28, 2012, Defendant responded with a form letter stating, in part, "[w]e again thoroughly reviewed your claim, but must maintain our original disposition payment of $1,176.91." No explanation. No method of calculation. No reference to Plan terms. No Plan document. The Plan did produce what it referred in correspondence as a Summary Plan Description, but which was actually titled a Benefit Booklet. The Benefit Booklet states, "[i]n the event of a conflict between this booklet and the terms in the PLAN document, the PLAN document will control." The Benefit Booklet is, therefore, irrelevant without the Plan as the Plan language controls according to the Benefit Booklet's own terms and ERISA law. *See Cigna v. Amara,* 131 S.Ct. 1866 (2011). Further, the Benefit Booklet states:

> "You may request, at no charge reasonable access to, and copies of, all documents, records and other information relevant to your claim for benefits."

Defendant failed to comply even with the terms of its own Benefit Booklet.

54.    On August 8, 2012, Plaintiff sent its Level II Appeal again seeking a full and fair review and again requesting the Summary Plan Description, the Master Plan Documents, the IRS 5500 Form, and the entire claim files or the administrative records. In fact, Plaintiff even offered to attempt to resolve the dispute and withdraw the appeal if Defendant would explain the basis for its adverse benefits determination including the use of code terms like "charge exceeds fee schedule." Although Plaintiff requested fee schedules, Defendant provided none in violation of ERISA and its own Benefit Booklet. As of the date of filing of this lawsuit, no decipherable explanation has been given by Defendant for its adverse benefit determination and therefore, Defendant should be estopped from offering, from this day forward, any explanation for same or from raising any defense to Plaintiff's claim for billed charges for the services it provided to TL, or for any of the other patients whose claims are the subject of this suit.

55.    Plaintiff's experience with TL's verification, claim, appeals and request for documents is representative of all of its claims for services rendered to Defendant's members.

56.    After adjusting for the patients' financial responsibility, these claims total approximately $237,539.44.

### Count One - Claim for Plan Benefits Under 29 U.S.C. §1132(a)(1)(B)

57.    Plaintiff incorporates and re-alleges the allegations set forth above.

58.    The Plan terms and provisions which Defendant has breached are the out-of-network provider benefit provisions. The out-of-network provider benefit provisions require reimbursement to out-of-network providers based on Plan terms. As assignees of self-funded members under 29 U.S.C. §1132(a)(1)(B), Plaintiff brings this claim to enforce the terms of the Plan at issue in which the Defendant has made claim determinations without valid data and/or

has done so in an arbitrary and capricious fashion, and to obtain appropriate relief under such provision. As referenced in this complaint, Defendant has paid wholly inadequate amounts for reimbursement for services rendered. Such reimbursement was never based on Plan terms as evidenced by the arbitrary and capricious reimbursement of 1.3% of billed charges, on average and the failure to produce Plan documents which is a violation of ERISA. Under 29 U.S.C. §1132(a), Plaintiff is entitled to recover benefits due to it or the patients from whom they received assignments of benefits, under the terms of the member's welfare benefit plan.

59.     Defendants had a fiduciary responsibility to the beneficiaries, including Plaintiff and/or the patients who made the assignments of benefits to Plaintiff, because Defendant exercised discretion, authority and control in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries. As a fiduciary under ERISA, Defendant is subject to liability under §29 U.S.C. §1132(a). In violation of ERISA, Defendant failed to make payments of benefits to Plaintiff, as assignee of members of the pertinent employee benefit plan, as required under the terms of the Plan.

60.     As described above, the Defendant, in violation of ERISA and Department of Labor regulations, failed to reference the plan provisions on which it based its adverse determinations or to notify Plaintiff of its right to receive copies of the plan documents.

61.     Defendant breached the terms of the plan of such members in whose shoes Plaintiff stands, by making claim determinations that had the effect of reimbursing less than what was required under the Plan without valid evidence or information to substantiate such determination and/or in an arbitrary and capricious fashion. As a proximate result of the Defendant's wrongful acts, Plaintiff has been damaged in the amount of at least $237,539.44. *See* Claims Data Detail, attached as Exhibit "A".

62.     Further, Defendant's wholesale and flagrant disregard of the substantive and procedural requirements under ERISA and the accompanying Department of Labor regulations evidence an utter disregard of the underlying purpose of the Plan. Accordingly, the review standard employed should be heightened from abuse of discretion to *de novo*.

### Count Two - Failure to Provide Full and Fair Review under ERISA

63.     Plaintiff incorporates and re-alleges the allegations set forth above.

64.     Defendant is the "plan administrator" within the meaning of such term under ERISA when it is designated as a plan administrator for such plan, or acts in the role of a plan administrator with the discretion generally accorded to a plan administrator. As such, Plaintiff is entitled to assert a claim for relief under 29 U.S.C. §1132(a)(3).

65.     Although Defendant was obligated to do so, it failed to provide a "full and fair review" to Plaintiff and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. §1133 (and its regulations). As referenced in this complaint, Plaintiff requested appeals at least twice and exhausted all administrative remedies under the Plan before bringing this lawsuit. Instead of providing a full and fair review as required by ERISA, Defendant responded with computer-generated form letters stating, in part, "[w]e again thoroughly reviewed your claim, but must maintain our original disposition payment..."

66.     Plaintiff was proximately harmed by Defendant's failure to comply with 29 U.S.C. §1133 and has been damaged in the amount of at least $237,539.44. *See* Claims Data Detail attached as Exhibit "A".

### Count Three - Claim for Violations of Claims Procedure under ERISA

67.     Plaintiff incorporates and re-alleges the allegations set forth above.

68.     Defendant is an insurance company that is subject to regulation under the

insurance laws of more than one state, including the State of Texas. Further, Defendant processes benefit claims providing claims filing and notices of decisions to policyholders in such plans.

69.     Defendant is an insurance company which therefore must comply with claims procedures defined by law (e.g., 29 CFR §2560.503-1) for subscribers and members of which Plaintiff is an assignee. Plaintiff is therefore entitled to seek additional relief if an insurance company failed to comply with federal law. 29 U.S.C. § 1132(a)(3). ERISA § 2560.503-1(g) requires the plan administrator to provide proper notification for any adverse benefits determination in whole or in part:

> (g) Manner and content of notification of benefit determination.
>
> (1)     Except as provided in paragraph (g)(2) of this section, the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i)     The specific reason or reasons for the adverse determination;
>
> (ii)     ***Reference to the specific plan provisions on which the determination is based;***
>
> (iii)     A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv)     A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v)     In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,
>
> (A)     If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion

will be provided free of charge to the claimant upon request; or (B) If the adverse benefit determination is based on a Sleep Medicine or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

70.     Defendant violated these claims procedure regulations by engaging in conduct that rendered its claims procedures and appeals process unfair to members and their assignee, Plaintiff.

71.     As a proximate result of Defendant's violation of such regulations, Plaintiff has been harmed in the amount of at least $237,539.44. *See* Claims Data Detail attached as Exhibit "A".

## Count Four - Failure to Provide Information upon Request.

72.     Plaintiff incorporates and re-alleges the allegations set forth above.

73.     The acts and omissions on the part of Defendant in failing to comply with the request for information pursuant to 29 U.S.C. §1132(c)(1)(B) provides a civil penalty/sanction in the amount of $110 a day for such failure or refusal to provide the requested documents and information. As such, Plaintiff is not only entitled to the requested documents through the appropriate Order of this Court, but it is also entitled to the $110 per day civil penalty.

## Count Five - Breach of Contract.

74.     Plaintiff incorporates and re-alleges the allegations set forth above.

75.     The conduct of Defendants described herein constitutes breach of contracts. The patients purchased plans or policies from the Defendant which included out-of-network benefits. Defendant confirmed the existence of out-of-network coverage at the time of insurance verification by Plaintiff. Further, Defendant agreed at time of insurance verification that the patients had coverage for the procedures to be performed. Once the procedures were performed

by Plaintiff, Defendant breached its obligations to provide out-of-network benefits by either denying coverage altogether or by reimbursing at rates less than dictated by plan language. Through assignment, this breach damaged Plaintiff. All conditions precedent to Plaintiff's right to recover have occurred. As a proximate result of Defendant's breaches, Plaintiff has been damaged in the amount $237,539.44. *See* Claims Data Detail attached as Exhibit "A".

### Count Six - Negligent Misrepresentation.

76.     Plaintiff incorporates and re-alleges the allegations set forth above.

77.     Defendant is liable for the negligent misrepresentations it made to Plaintiff. Plaintiff would show that it justifiably relied upon Defendant's representations that were made in the course of its business or in the transaction in which it had a pecuniary interest, Defendant's representations supplied false information for the guidance to Plaintiff in their business, and Defendant did not exercise reasonable care or competence in obtaining or communicating the information. The negligent misrepresentations include those representations by Defendant, or its agents, that the patients at issue were covered under the Plan, that the out-of-network medical services to be provided by Plaintiff were covered under the terms of the Plan, that the Plan would pay Plaintiff the reasonable and customary charges for the expected medical services, as specifically represented by Defendant or its agents via telephone during the insurance verification process referenced in this complaint and as documented by Plaintiff.

78.     In justifiable reliance on these false statements, Plaintiff provided healthcare services to the patients. It was only later, when the claim for services had been denied in whole or in part or just not paid at all, that Plaintiff realized that Defendant misrepresented to Plaintiff that the patients were covered under the Plan. Further, to the extent that the members/insureds are not covered by the applicable health benefits Plan as represented by Defendant to Plaintiff, Defendant made misrepresentations actionable under common law. Plaintiff has been damaged

27

due to reasonable reliance on the negligent misrepresentations of Defendant in the amount of at least $237,539.44. *See* Claims Data Detail attached as Exhibit "A".

**Count Seven - Alternative Claim: ERISA Breach of Fiduciary Duty.**

79.     Plaintiff incorporates and re-alleges the allegations set forth above.

80.     Pursuant to ERISA § 502(a)(3) and 29 U.S.C. § Section 1132(a)(3), Plaintiff, as assignee of the rights of the patients/members, <u>alternatively</u> pleads that Defendant breached its fiduciary duties to the Plaintiff, as assignee of the patients, in connection with the subject ERISA plan claims.

81.     Defendant is a fiduciary to Plaintiff, as assignee of the patients' rights, in connection with the group health plans, as such term is understood under ERISA. In its capacity as the insurer, plan administrator, claims administrator and/or fiduciary of ERISA group plans, Defendant is a fiduciary.

82.     Defendant breached its fiduciary duties to Plaintiff, as assignee, by making benefit determinations without valid data or evidence to substantiate such determinations and/or doing so in an arbitrary and capricious fashion, by omitting material information about its determinations, and/or by making misrepresentations about coverage and its adverse benefit determinations.

83.     Defendant regularly issued Provider Claims Summaries or Remit Reports at time of benefits determination or payment which contradicted representations made by Defendant at the time of benefits verification and on which representations Plaintiff, as assignee, relied.

84.     Specifically, Defendant acted as a fiduciary because it exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to Plaintiff. The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of the plan. It

is clear from review of Defendant's representations and subsequent lack of payments, Provider Claim Summaries, and Remit Reports that Defendant's claims determinations are arbitrary and capricious, without reference to any plan language, and were motivated to benefit Defendant financially rather than to benefit the patients. These actions constitute a breach of Defendant's fiduciary duty and entitle Plaintiff to equitable relief, including a surcharge. *See Kenseth v. Dean Health Plan, Inc.,* 784 F. Supp2d 1081 (W.D. Wis. 2011).

85.     By engaging in the conduct described above, Defendant failed to act with the care, skill, prudence, and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan. Fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. 29 §§ 1104(a)(l)(B) and (D).

86.     As a fiduciary of a group health plan governed by ERISA, Defendant owed beneficiaries a duty of loyalty, or an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. Defendant cannot, for example, make benefit determinations for the purpose of maximizing profit to Defendant at the expense of beneficiaries.

87.     As a direct and proximate cause of Defendant's ERISA breaches, Plaintiff has been and continues to be damaged and is entitled to equitable relief by way of surcharge.

### Count Eight - Attorneys' Fees.

88.     Plaintiff has presented claims to Defendant demanding payment for the value of the services described above. More than 30 days have passed since those demands were made, but Defendant has failed and refused to pay Plaintiff. As a result of Defendants failures to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action.

Plaintiff is therefore entitled to recover reasonable attorneys' fees for necessary services rendered in prosecuting this action and any subsequent appeals.

89.     Plaintiff is also entitled to an award of attorneys' fees on its breach of contract and ERISA claims. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party." 29 U.S.C. §1132(g)(1). *See Hardt v. Reliance Std. Life Insurance. Co.,* 130 S.Ct. 2149, 2152 (2010); *see also Baptist Mem. Hosp. - Desoto, Inc. v. Crain Auto., Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

## Jury Demand

90.     Plaintiff demands a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays as follows:

(a)     judgment for actual damages;

(b)     attorneys' fees;

(c)     pre- and post-judgment interest;

(d)     costs of suit; and

(e)     any other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/Charles "Scott"Nichols*
Charles "Scott" Nichols
TX Fed. ID 256520
STRASBURGER & PRICE, LLP
909 Fannin, Suite 2300
Houston, Texas 77010-3033
(713) 951-5600 (Telephone)
(713) 951-5660 (Facsimile)

Jeanine O. Navarro
TX Fed. ID. 2582432
11233 Shadow Creek Pkwy, Suite 313
Pearland, TX  77584
(832) 230-8100
jnavarro@altushealthsystem.com

**Attorneys-in-Charge for Plaintiff**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 24, 2015, a true and correct copy of the foregoing was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all interested parties.


*/s/ Charles "Scott" Nichols* _____
**Charles "Scott" Nichols**